1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

FORT INDEPENDENCE INDIAN
10  COMMUNITY, a federally-
recognized tribe,
11
                                   NO. CIV. S-08-432 LKK/KJM
12           Plaintiffs,

13       v.
                                          O R D E R
14  STATE OF CALIFORNIA; ARNOLD
SCHWARZENEGGER, Governor of
15  the State of California;
JERRY BROWN, Attorney General
16  of the State of California,

17           Defendants

18  _____/

19       This case arises from a dispute involving class III gaming

20  compact negotiations between the State of California and plaintiff

21  Fort Independence Indian Community, a federally recognized Indian

22  tribe located in Inyo County, California.  Plaintiff alleges that

23  as a condition of entering into a Tribal-State compact, the State

24  demanded that the Tribe pay a certain percentage of its gaming

25  revenue to the State and that the Tribe cease participation in the

26  Revenue Sharing Trust Fund (RSTF).  Plaintiff argues that these

1

1  demands constitute an unlawful tax, fee, or other assessment on

2  gaming operations and are therefore impermissible subjects for

3  negotiation under the Indian Gaming Regulatory Act (IGRA), 25

4  U.S.C. §§ 2701 et seq.  In addition, plaintiff alleges that the

5  state violated the Equal Protection Clauses of the United States

6  and California Constitutions by treating the Tribe differently than

7  the Yurok Tribe located in Humboldt County, California.  Plaintiff

8  has brought suit against the State of California, Governor Arnold

9  Schwarzenegger, and Attorney General Jerry Brown seeking

10  declaratory and injunctive relief.  Pending before the court is

11  defendants' motion for judgment on the pleadings.  For the reasons

12  explained below, the court denies the motion with respect to the

13  IGRA claim but grants the motion with respect to the equal

14  protection claims and to defendant Attorney General Jerry Brown.

15                          **I. Background**

16  **A.   Indian Gaming Regulatory Act**

17       The Indian Gaming Regulatory Act was enacted in 1988 "as a

18  means of generating tribal government revenue" and to "promote

19  tribal economic development, self-sufficiency, and strong tribal

20  governments."  25 U.S.C. § 2701.  IGRA distinguishes between three

21  classes of gaming and provides for different forms of regulation

22  for each class.[1]  Only class III gaming -- at issue in this action

23

24       [1] Class I gaming includes "social games" for minor prizes or
   "traditional forms of Indian gaming."  25 U.S.C. § 2703(6).  Class
25  II gaming includes bingo and similar games and card games allowed
   by the state.  25 U.S.C. § 2703(7).  Class III gaming includes "all
   forms of gaming that are not class I gaming or class II gaming,"
26  25 U.S.C. § 2703(8), including traditional casino games such as

1  -- requires a compact that is negotiated between a tribe and a
2  state, and is subject to federal approval.  25 U.S.C. § 2710(d).
3      In order to conduct class III gaming, the tribe must first
4  request that the state enter into negotiations for such a compact.
5  25 U.S.C. § 2710(d)(3)(A).  Upon receipt of the request, the state
6  must "negotiate with the Indian tribe in good faith to enter into
7  such a compact."  Id.  Among the permissible subjects of
8  negotiations is "taxation by the State of such activities in such
9  amounts as are necessary to defray the costs of regulating such
10 activity."  25 U.S.C. § 2710(d)(3)(c)(iii).  States may attempt to
11 negotiate for issues not expressly enumerated in IGRA; but they may
12 not require tribes to negotiate for any such issue.
13     Of particular relevance here, IGRA prohibits a state from
14 conditioning negotiations and execution of a Tribal-State compact
15 upon the tribe's payment of a tax, fee, or other assessment.  25
16 U.S.C. § 2710(d)(4) ("[N]othing in this section shall be
17 interpreted as conferring upon a State . . . authority to impose
18 any tax, fee, or other assessment from an Indian tribe . . . to
19 engage in class III activity.  No State may refuse to enter into
20 [] negotiations . . . based upon the lack of [such] authority.").
21 **B.   Compact Negotiations with Fort Independence Indian Community**
22     Plaintiff is a federally-recognized Indian tribe located in
23 Inyo County, California.  Compl. ¶ 9.  It does not currently have
24 a gaming compact with the State of California.  Compl. ¶ 31.  As
25 _____
26 slot machines, roulette, and blackjack.

1  a  non-gaming  tribe,  however,  plaintiff  has  received  annual

2  contributions  of  $1.1  million  dollars  from  the  Revenue  Sharing

3  Trust  Fund.  Compl. ¶ 28.  The  RSTF  receives  funds  from  tribes  that

4  have  a  Tribal-State  compact  and  operate  more  than  350  gaming

5  devices;  it  then  redistributes  such  funds  to  non-compact  tribes.

6  Compl. ¶ 26.  The  RSTF  was  created  as  part  of  the  1999  compacts,

7  which,  in  conjunction  with  the  passage  of  Proposition  1A,  created

8  gaming  compacts  with  approximately  sixty  tribes.[2]  Compl. ¶ 24.

9  Non-compact  tribes  are  considered  third-party  beneficiaries  of  the

10  1999  compacts.  Compl. ¶ 31.

11      In  July  2004,  plaintiff  requested  that  the  State  of  California

12  enter  into  negotiations  with  it  for  the  formation  of  a  Tribal-State

13  Compact.  Compl. ¶ 32.  Throughout  the  negotiations,  the  State  has

14  allegedly  conditioned  the  acceptance  of  a  Tribal-State  Compact  upon

15  plaintiff's  agreement  to  pay  a  percentage  of  its  gaming  revenues

16  to  the  State  and  to  cease  its  participation  in  the  RSTF,  despite

17  plaintiff's  agreement  to  operate  less  than  350  gaming  devices.

18  Compl. ¶¶ 34-36.

19      Plaintiff  objected  to  the  revenue  sharing  on  the  grounds  that

20  it  would  constitute  a  tax,  fee,  or  other  assessment  under  IGRA.

21  Compl. ¶ 40.  In  addition,  plaintiff  refused  to  cease  participation

22  in  the  RSTF  on  the  grounds  that  as  a  would-be  operator  of  less  than

23

---

24      [2]  Pursuant  to  Proposition  1A,  amending  the  California
Constitution,  the  Governor  is  authorized  to  negotiate  and  conclude
25  compacts,  subject  to  legislative  ratification,  that  allow  Indian
tribes  to  conduct  and  operate  slot  machines,  lottery  games,  and
26  banked  and  percentage  card  games  on  Indian  lands.  Compl. ¶ 22.

350 gaming devices, it would still be legally entitled to the RSTF payment.  Id.  Plaintiff also noted that the State allowed other tribes to receive RSTF payments while operating 350 gaming devices or less.  Compl. ¶ 30.  In particular, the State allegedly negotiated a compact with the Yurok Tribe that allowed the tribe to operate ninety-nine gaming devices and to continue as an RSTF participant.  Compl. ¶ 44.

Defendants have also filed a request for judicial notice regarding two pieces of correspondence, which they argue estop plaintiff's IGRA claim.  First, in a letter purportedly sent from the Tribe to the Governor on July 21, 2004, in which plaintiff was said to agree "with the Governor's belief that Indian Tribes should provide compensation to the state in recognition of the unique privilege and benefit that gaming provides."  Req. for Judicial Notice, Ex. 1.  The next sentence of the letter then noted, "[w]e estimate that the approximately 80 gaming devices the Tribe is seeking would generate a win per day of $80 per machine."  Id. Second, the Governor's Office purportedly responded on September 3, 2004 by agreeing "to meet with the Tribe in accordance with [the Tribe's] representations."  Req. for Judicial Notice, Ex. 2.  On the basis of these letters, defendants argue that plaintiff initially agreed to revenue sharing.

## II. Standard

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed. R. Civ. P. 12(c).  All allegations of fact by the

party opposing a motion for judgment on the pleadings are accepted as true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir.1984). A "dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at 810; Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989). Thus, the court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Int'L Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). The plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court may not dismiss the complaint if there is a reasonably founded hope that the plaintiff may show a set of facts consistent with the allegations. Bell Atlantic Corp. v. Twombly, -- U.S. --,

1 | 127 S. Ct. 1955, 1967-69 (2007).  In spite of the deference the
2 | court is bound to pay to the plaintiff's allegations, however, it
3 | is not proper for the court to assume that "the [plaintiff] can
4 | prove facts which [he or she] has not alleged, or that the
5 | defendants have violated the . . . laws in ways that have not been
6 | alleged."  Associated General Contractors of California, Inc. v.
7 | California State Council of Carpenters, 459 U.S. 519, 526 (1983).
8 | The complaint must allege sufficient facts to provide " 'fair
9 | notice' of the nature of the claim [and] also 'grounds' upon which
10 | the claim rests."  Bell Atlantic Corp., 127 S. Ct. at 1965 n.3.

**III. Analysis**

12 | **A.   IGRA Claim**

13 | First, defendants move to dismiss plaintiff's IGRA claim,
14 | which alleges that the State has acted in bad faith by
15 | conditioning the Tribal-State Compact upon plaintiff's payment
16 | of a portion of its future gaming revenue to the State and
17 | discontinuation of the receipt of RSTF payments.

18 | Defendants rely principally upon In re Indian Gaming
19 | Related Cases, 331 F.3d 1094, 1110-15 (9th Cir. 2003).  There,
20 | the compact offered by the state permitted the operation of slot
21 | machines and house banked blackjack in exchange for the tribes'
22 | agreement to contributed to the RSTF.  Id. at 1103-05.  The
23 | tribes brought suit, arguing that the contributions went beyond
24 | the amounts necessary to compensate the State for the cost of
25 | regulating gaming and therefore constituted a tax under IGRA.
26 | Id. at 1110-11.  The Ninth Circuit rejected this claim, finding

1  that the State had not engaged in bad faith by conditioning the

2  compact upon the RSTF provision.  Id. at 1111.

3      Crucially, however, the Ninth Circuit reached this

4  conclusion because the state had offered "meaningful concessions

5  in return for fee demands."  Id. at 1112.  The State had no

6  obligation to enter into negotiations concerning most forms of

7  class III gaming,[3] nor did it have an obligation to amend its

8  constitution to grant a monopoly to tribal gaming

9  establishments.  Id.  Under these circumstances, the court found

10 that the State had not exercised "authority to impose a[] tax,

11 fee, charge, or other assessment" under 25 U.S.C. § 2710(d)(4).

12 It further cautioned: "We do not hold that the State could have,

13 *without offering anything in return*, taken the position that it

14 would conclude a Tribal-State compact with [the Tribe] only if

15 the tribe agreed to pay into the RSTF."  Id. at 1112 (emphasis

16 in original).

17     The Ninth Circuit further noted that "[d]epending on the

18 nature of both the fees demanded and the concessions offered in

19 return, such demands might, of course, amount to an attempt to

20 'impose' a fee, and therefore amount to bad faith on the part of

21 a State."  Id.  Accordingly, courts must consider the totality

22 of the circumstances when undertaking the "fact-specific" good

23 faith inquiry required by IGRA.  Id.

24 _____

25     [3] See Rumsey Indian Racheria of Wintun Indians v. Wilson, 63
   F.3d 1250, 1258 (9th Cir. 1994) ("IGRA does not require a state to
26 negotiate over one form of Class III gaming simply because it has
   legalized another, albeit similar form of gaming.").

1    Here, drawing all reasonable inferences in favor of

2 plaintiff, the complaint alleges that the State's demands exceed

3 those that are permitted to compensate it for the regulation of

4 gaming under IGRA.  See Compl. ¶ 19 (noting permissible subjects

5 of negotiation under 25 U.S.C. § 2710(d)(3)(C)); Compl. ¶ 38

6 (alleging that the State demanded provisions that constituted a

7 tax, fee, charge, or other assessment).  Indeed, plaintiff

8 alleges that it proposed terms that would have indirectly

9 compensated the State for costs associated with regulation by

10 paying for infrastructure development and mitigation costs to

11 the local government.  Compl. ¶ 36.

12    Significantly, the complaint does not allege any

13 "meaningful concessions in return for fee demands" offered by

14 the state.  In re Indian Gaming Related Cases, 331 F.3d at 1112.

15 Because the court must accept plaintiff's allegations as true

16 for purposes of a motion for judgment on the pleadings,

17 dismissal at this stage would be inappropriate.

18    In addition, defendants argue that plaintiff should be

19 equitably estopped from claiming that the State acted in bad

20 fath because, when it requested compact negotiations, the Tribe

21 purportedly agreed to compensate the State for the "privilege

22 and benefit" of gaming.  Defs.' Req. for Judicial Notice, Ex. 1.

23 The parties dispute whether this statement, made in a letter

24 sent from the Tribe to the Governor on July 21, 2004, is subject

25 to judicial notice.  Assuming that the letter is subject to

26 judicial notice, however, the statement does not necessarily

1 evince an intention on the part of the Tribe to revenue share

2 with the State or to forego its RSTF payments.  Instead, the

3 statement could also be interpreted as referring to the state's

4 right to defray costs associated with the regulation of gaming

5 under § 2710(d)(4) of IGRA.[4]

6     In order to fully evaluate defendants' claim for equitable

7 estoppel, the court must consider the totality of the

8 circumstances, which it cannot do in the current posture.  For

9 example, the letter states that the Tribe "agrees with the

10 Governor's belief that Indian tribes should provide compensation

11 to the state in recognition of the unique privilege and benefit

12 that gaming provides."  The Governor's belief, and any shared

13 understanding between the parties as to that belief, is outside

14 the scope of the pleadings, and cannot be ascertained based upon

15 the limited materials submitted by defendants in their request

16 for judicial notice.  Similarly, defendants' assertion that

17 "[t]he Plaintiff knew that Governor Schwarzenegger was

18 negotiating compacts that included revenue sharing provisions

19 and invited the State to negotiate on the basis" is a factual

20 issue that cannot be resolved on the pleadings.  See <u>Kosakow v.</u>

21 <u>New Rochelle Radiology Ass'n</u>, 274 F.3d 706, 725 (2d Cir. 2001)

22

23     [4] That said, the next sentence of the letter reported the
estimated earnings from gaming per day.  It is not clear why this

24 estimate would be relevant to the State's regulation costs.
Instead, it appears more consistent with defendants' argument, that

25 the Tribe envisioned the possibility of revenue sharing.  Whatever
the effect of that statement, however, it seems clear that

26 resolution of that ambiguity on a motion for judgment on the
pleadings is inappropriate.

1  ("Whether equitable estoppel applies in a given case is

2  ultimately a question of fact."). Accordingly, the court denies

3  the motion for judgment on the pleadings with respect to

4  plaintiff's IGRA claim.

5  **B.   Equal Protection Claim**

6       Defendants also move for dismissal of plaintiff's equal

7  protection claim, arguing that a tribe is not a "person" under §

8  1983 for purposes of an equal protection claim. Defendants rely

9  principally upon Inyo County v. Paiute-Shoshone Indians of the

10  Bishop Community, 538 U.S. 701 (2003). There, a tribe

11  challenged the county's authority to seize casino employee

12  records as part of a welfare fraud investigation. The Tribe

13  sought relief under § 1983, claiming that the county had

14  violated its Fourth and Fourteenth Amendment rights and its

15  right to self-government. The Supreme Court rejected the claim,

16  holding that the Tribe was not a "person" for purposes of § 1983

17  -- not based upon a "bare analysis" of the term "person" -- but

18  based upon the "legislative environment" in which the word

19  appears. Id. at 711. Specifically, it held that the tribe's

20  assertion of sovereign immunity did not fall within § 1983's

21  purpose of securing private rights against government

22  encroachment. Id. at 712; cf. id. at 714 (Stevens, J.,

23  concurring) ("the Tribe rests its case entirely on its claim

24  that, as a sovereign, it should be accorded a special immunity

25  that private casinos do not enjoy"). _____

26  _____Here the plaintiff seeks through its equal protection claim

11

1  to enforce a right that only exists by virtue of its status as a

2  sovereign. The complaint alleges that other tribes are given

3  "special privileges and/or immunities" that are denied to the

4  plaintiff with regard to the operation of gaming by the

5  respective tribe. Compl. ¶¶ 63, 64. This asserted interest only

6  exists by the plaintiff's status as a sovereign or, put

7  differently, as an entity able to negotiate and secure

8  agreements with the defendants regarding gaming. See Inyo

9  County, 538 U.S. at 711 (it was "only by virtue of the Tribe's

10  asserted 'sovereign' status" that its equal protection rights

11  have been allegedly violated).  Like the Tribe in Inyo County,

12  plaintiff here asserts that it possesses a constitutionally

13  protected interest, but that interest is one that a similarly

14  situated private party would not enjoy.  See id.  Accordingly,

15  the court finds that the right asserted by the Tribe is not a

16  private right that falls within the scope of § 1983.  The court

17  therefore grants the motion for judgment on the pleadings with

18  respect to plaintiff's equal protection claim.[5]

19  **C.   Suit Against the Attorney General**

20       Finally, defendants argue the Attorney General is an

21  improper defendant to this suit, because it is the Governor,

22  rather than the Attorney General, who represents the State in

23  _____

24       [5] Defendants also argue that the statutory remedy afforded by
     IGRA should be exclusive, see Seminole Tribe of Florida v. Florida,
25  517 U.S. 44, 73-74 (1996) (declining to permit a separate IGRA
     enforcement action through Ex Parte Young), but Seminole Tribe did
26  not confront the equal protection issues present here.

1   class III gaming compact negotiations.  Cal. Const., art. IV, §

2   19(f) ("the Governor is authorized to negotiate and conclude

3   compacts").  Plaintiff responds that it is possible that the

4   Governor delegated this authority to the Attorney General.  See,

5   e.g., Westly v. Superior Court, 125 Cal. App. 4th 907, 909

6   (2004).  The complaint, however, does not contain any such

7   allegation.[6]  In addition, to the extent that the Attorney

8   General provided legal advice to the Governor, whose conduct in

9   turn gave rise to the causes of action, any injury suffered by

10  plaintiffs may be redressed through the Governor.  Accordingly,

11  the court grants the motion as it pertains to the Attorney

12  General.

13                        **IV. Conclusion**

14      For the reasons set forth above, the court GRANTS IN PART

15  and DENIES IN PART the motion for judgment on the pleadings.

16  Defendant Jerry Brown is DISMISSED from this action.

17      IT IS SO ORDERED.

18      DATED:  September 10, 2008.

19

20

21                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
22                              UNITED STATES DISTRICT COURT

23

24  _____

25      [6] To the extent that plaintiff wishes to amend its complaint,
    it must first demonstrate good cause, as noted in the court's
26  scheduling order.

                                13